## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**FENIX ENTERPRISES, INC., et al.,**

        **Plaintiffs,**

-v-

**M&M MORTGAGE CORP., INC., et al.,**

        **Defendants.**

Case No. 3:08-cv-124

Judge Thomas M. Rose

---

### ENTRY AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST RONNIE TIMMONS, RAYMOND L. EVANS AND LOKOMOTIV, INC. (Doc. #53)

---

This matter arises from the alleged transfer of $300,000 by Plaintiffs Fenix Enterprises, Inc. ("Fenix") and Darryl Steward ("Steward") to Defendant M&M Capital Group, LLC ("M&M"). The alleged transfer was related to the purchase of real estate at The Resort at Singer Island. Also named as Defendants are M&M Mortgage Corp., Inc. ("M&M Mortgage"), Michael D. Randles ("Randles"), Ronnie Timmons ("Timmons"), Raymond L. Evans ("Evans") and Lokomotiv, Inc. ("Lokomotiv"). Randles is the owner of M&M and M&M Mortgage. Timmons and Evans are the owners of Lokomotiv.

Plaintiffs' Complaint brings five Claims for Relief. All five Claims for Relief are against all of the Defendants. The First Claim for Relief is for breach of contract. The Second Claim for Relief is for fraud. The Third Claim for Relief is for conversion. The Fourth Claim for Relief is for engaging in a pattern of corrupt activity and the Fifth Claim for Relief is for violation of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.01.

The Plaintiffs are citizens of Ohio and the Defendants are all citizens of Georgia. (Compl.

¶ 9.) Therefore, this Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and no Party has argued otherwise.

The Court initially issued an ex parte Temporary Restraining Order ("TRO") against all of the Defendants and their agents restraining them from further use of any of the Defendants' funds up to an amount of $300,000. (Doc. #16.) Upon a hearing on Plaintiffs' Motion for a Preliminary Injunction, the Court dissolved the TRO as it applied to Defendants M&M, M&M Mortgage and Randles. (Doc. #20.)

Now before the Court is the Plaintiffs' Motion for Partial Summary Judgment against Timmons, Evans and Lokomotiv. (Doc. #53.) The time has run and neither Timmons, nor Evans nor Lokomotiv have responded.

Timmons, Evans and Lokomotiv have been served, have filed an answer to Plaintiffs' Complaint,[1] and have been served a copy of Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs' Motion for Partial Summary Judgment is, therefore, ripe for decision. The standard of review for motions for summary judgment will first be set forth followed by a factual background and an analysis of the Motion for Partial Summary Judgment.

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[1] It is unclear as to whether corporate Defendant Lokomotiv is represented, as required, by a registered attorney.

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as

true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

In addition to applying the federal procedural standard for motions for summary judgment, as a federal court located in Ohio exercising diversity jurisdiction, this Court must apply Ohio substantive law unless the law of another state is specifically implicated. *Hisrich v. Volvo Cars of N. America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). This Court must apply the

substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001)(quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)).

To the extent that the highest court in Ohio has not addressed the issue presented, this Court must ascertain from all available data, including the decisional law of Ohio's lower courts, what Ohio's highest court would decide if faced with the issue. *Id.; Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Finally, where Ohio's highest court has not addressed the issue presented, a federal court may not disregard a decision of an Ohio appellate court on point unless the federal court is convinced by other persuasive data that the highest court of Ohio would decide otherwise. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989).

## FACTUAL BACKGROUND

Defendants Timmons, Evans and Lokomotiv have not submitted any Rule 56 evidence. Therefore, this factual background is taken exclusively from the sworn statement[2] of Darryl Steward that is dated April 15, 2009, and is attached to Plaintiffs' Motion for Partial Summary Judgment.

The introductory paragraph of Steward's sworn statement indicates that the facts therein are submitted in support of the Plaintiffs' Motion for Summary Judgment against Defendants Ronnie Timmons, Raymond Evans and Lokomotiv. Therefore, any further reference in Steward's sworn statement to the Defendants will be considered a reference to Timmons, Evans

---

[2]This sworn statement is entitled, "Proposed Undisputed Facts for Resolution of Partial Summary Judgment." It incorporates Exhibits A and B to the Complaint.

and Lokomotiv.

Timmons and Evans are the owners of Lokomotiv, a Georgia corporation. In January of 2008, they made contact with Steward in Greene County, Ohio.

Timmons, Evans and Lokomotiv represented to Steward that they were in the midst of purchasing real estate in Florida known as The Resort at Singer Island (the "Resort"). They asked Steward to consider helping them to finance the Project. Specifically, Timmons, Evans and Lokomotiv represented that, if Steward or his Company, Fenix Enterprises, would give them $300,000, they would return to him $400,000 upon closing their purchase of the Resort, which they anticipated to happen soon.

Timmons, Evans and Lokomotiv told Steward that he should send the $300,000 to Michael Randles of M&M and M&M Mortgage. They said that Randles was working for them to help raise financing for purchase of the Resort. Further, Steward was told by Timmons, Evans and Lokomotiv that, if he sent the $300,000, it would be deposited into escrow with a title agency, such as Chicago, pending the closing of the real estate transaction.

Steward and Fenix then entered into an Acquisition Support Contract with the buyers and sellers of the Resort. Pursuant to this Contract, Fenix is to provide acquisition support for the Resort including planning, consulting, budgetary, contract and program management functions. The Acquisition Support Agreement also provides that Steward and Fenix are to initially deposit $300,000 into an escrow account on behalf of M&M Mortgage, the buyer.

In return, the Acquisition Support Contract provides that Fenix is entitled to a contract fee of $140,000 and to return of its $300,000 upon closing of the real estate transaction. Finally, the title company is to wire $440,000 to Fenix's Accounts Receivable account at Chase Bank

when the purchase of the Resort closes.

The Acquisition Support Agreement provided to the Court is signed by M&M Mortgage as the buyer and is not signed by the title company, which is identified as the seller. Further, Steward and Fenix indicate that they entered into this Contract.

In reliance on Timmons', Evans' and Lokomotiv's representations, Steward, through Fenix, wired $300,000 to an account maintained by Randles. Randles is identified by Steward as an agent for Timmons, Evans and Lokomotiv. However, the $300,000 was not deposited into an escrow account. It was allegedly "misappropriated" to M&M and Randles who spent it.

In February of 2008, Steward asked for an accounting of the use and whereabouts of the $300,000. Timmons, Evans and Lokomotiv were unresponsive to this request. Steward then demanded that Timmons, Evans and Lokomotiv return his $300,000.

In late February of 2008, Timmons, Evans and Lokomotiv admitted that they did not deposit the $300,000 into an escrow account or any other vehicle to preserve the $300,000. Steward then demanded the immediate return of the $300,000. In a letter dated February 28, 2008, Timmons, Evans and Lokomotiv promised to repay Steward within 14 to 30 days with the understanding that Fenix had opted to remove/exit itself entirely from the project involving the Resort.

Steward now says that Timmons, Evans and Lokomotiv had no ability to purchase the Resort shortly after January of 2008 and that Timmons, Evans and Lokomotiv did not and do not now have any contract to purchase the Resort. Steward also now says that Timmons, Evans and Lokomotiv and their agents had no intention to ever put his $300,000 into an escrow account or into an account maintained by a title insurance company. He also says that Timmons, Evans and

Lokomotiv had no intention to repay him the $300,000 when they offered to do so. Finally, after he had forwarded the $300,000, Steward learned that M&M, M&M Mortgage and Randles had been sued several times before January of 2008 alleging that they had defrauded investors in various real estate transactions or other investment vehicles.

Steward's $300,000 payment has not been returned to him. He, therefore, filed the lawsuit that is now before the Court.

## ANALYSIS

The Plaintiffs now seek summary judgment on their fraud, breach-of-contract and "conversion and theft claims."[3] Each will be addressed seriatim.

### Fraud Claim

Plaintiffs allege, for purposes of their Motion for Partial Summary Judgment, that Timmons, Evans and Lokomotiv have defrauded them out of their funds by failing to account for the funds and/or place them into a title company as Escrow Agent, or identify where the funds are held. In their Motion for Partial Summary Judgment, Plaintiffs add that Timmons, Evans and Lokomotiv also misrepresented that they were purchasing the Resort. As a result of both alleged misrepresentations, Plaintiffs allege that they are damaged in the amount of $300,000.

The elements of an Ohio common-law fraud claim are; (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading

---

[3] The Plaintiffs make no specific theft claim so the claim referred to in their Motion for Partial Summary Judgment as a "conversion and theft" claim will be considered to be only a conversion claim.

another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Rorig v. Thiemann*, No. 1:05CV801, 2007 WL 2462653 at * 4 (S.D. Ohio Aug. 27, 2007)(citing *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000)).

In this case, the Rule 56 evidence presented by Steward and Fenix satisfies all of the elements of an Ohio fraud claim regarding the purchase of the Resort and the treatment of Steward's and Fenix's $300,000. There is Rule 56 evidence that: Timmons, Evans and Lokomotiv represented to Steward and Fenix that they were purchasing the Resort and that the $300,000 would be deposited into an escrow account; that the purchase of the Resort and the act of depositing the $300,000 into the escrow account was material to Steward and Fenix; that the assertion that Timmons, Evans and Lokomotiv were purchasing the Resort and that the $300,000 would be deposited into an escrow account were falsely made and made with the intent that Steward and Fenix would rely upon them; that Steward and Fenix did rely upon the misrepresentation that Timmons, Evans and Lokomotiv were purchasing the Resort and that the $300,000 would be deposited into an escrow account; and that Steward and Fenix were damaged to the extent that Timmons, Evans and Lokomotiv have not returned the $300,000 sent to them.

Based upon the Rule 56 evidence submitted to the Court, there are no genuine issues of material fact and Steward and Fenix are entitled to judgment as a matter of law on their Second Claim for Relief. Summary judgment is granted on Steward's and Fenix's Second Claim for Relief against Timmons, Evans and Lokomotiv for fraud.

## **Breach-of-Contract Claim**

The Plaintiffs allege, for purposes of this Motion for Partial Summary Judgment, that

Timmons, Evans and Lokomotiv breached a contract. As a result, the Plaintiffs allege that they are entitled to rescission of the contract and a return of the $300,000.

To prove a breach of contract under Ohio law, the plaintiff must establish the following elements: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004)(citing *Thomas v. Publishers Clearing House, Inc.*, 29 Fed. Appx. 319, 322 (6th Cir. 2002)). To prove the existence of a valid contract, a party must prove that there was an offer, an acceptance, contractual capacity, consideration, a manifestation of mutual assent and legality of object and of consideration. *Morgan v. Del Global Technologies Corp.*, No. 3:05-CV-123, 2007 WL 3227068 at *13 (S.D. Ohio Oct. 29, 2007)(citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)). Mutual assent means that both parties to the contract must consent to its terms - there must be a meeting of the minds. *Id.* (citing *Juhasz v Costanzo*, 761 N.E.2d 679, 684 (Ohio Ct. App. 2001)).

The law strongly favors written contracts but does recognize oral contracts. *LaPoint v. Templeton*, No. F-07-014, 2008 WL 1700522 at * 4 (Ohio Ct. App. Apr. 11, 2008). The "terms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.'" *Id.*(quoting *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). "[S]eldom, if ever, does the evidence in proof of an oral contract present its terms in the exact words of offer and acceptance found in formal written contracts. And no such precision is required. It is sufficient if the intent is disclosed by word, deed, act, or even silence." *Id.* (citing *Rutledge v. Hoffman*, 75 N.E.2d 608, 609 (Ohio Ct. App. 1947)). Therefore, while mutual assent is usually manifested by offer and acceptance, in oral contracts, mutual assent may be manifested by other acts or failures to act. *Id.*

-10-

When a party is defrauded by means of a contract, the party may affirm the contract and sue for damages. *Jack Mann Chevrolet Co. v. Associates Inv. Co.*, 125 F.2d 778, 783 (6th Cir. 1942). In lieu of affirming the contract and suing for damages, the non-breaching party may rescind the contract. *Jack Mann*, 125 F.2d at 783; *Lewis v. White*, 1866 WL 6 at **6 (Ohio 1866). However, in the absence of fraud or mistake, one of the parties to a contract cannot rescind the contract without the consent of the other party. *Cantor v. Cantor*, 174 N.E.2d 304, 313 (Ohio Prob. 1959). When a contract is rescinded, it must be rescinded in total and the parties put in the position that they were before the contract was executed. *Lyon v. Bertram*, 61 U.S. 149, 154 (1857).

In this case, the only written contract submitted by Steward and Fenix is the Acquisition Support Contract. However, neither Timmons nor Evans nor Lokomotiv are a party to the Acquisition Support Contract so they could not be said to have breached the Acquisition Support Contract.

There is, however, undisputed Rule 56 evidence that Timmons, Evans and Lokomotiv entered into an oral contract with Steward and Fenix. There is Rule 56 evidence that Timmons, Evans and Lokomotiv asked Steward to help them to finance the purchase of the Resort. Specifically, Timmons, Evans and Lokomotiv told Steward that, if he or his company, would give them $300,000, they would return $400,000 to him upon closing their purchase of the Resort. The Rule 56 evidence now before the Court provides no indication as to the dates by which this oral contract was to be performed other than Timmons, Evans and Lokomotiv indicated that they anticipated their purchase of the resort to happen soon.

Steward was told to send the $300,000 to Michael Randles, who was working for

Timmons, Evans and Lokomotiv. He was also told that the $300,000 would be deposited into escrow with a title agency.

Steward accepted the oral contract and forwarded the $300,000. Thus, based upon the Rule 56 evidence that is before the Court, Steward and Fenix entered into an oral contract with Timmons, Evans and Lokomotiv that included an offer, an acceptance, consideration, a manifestation of mutual assent and legality of object and consideration. Finally, presumably all parties to this oral contract had contractual capacity.

Steward and Fenix now wish to rescind this oral contract and want the $300,000 to be returned to them. Steward and Fenix may elect to rescind the oral contract instead of suing for a breach of the oral contract. They cannot do so, however, without the consent of Timmons, Evans and Lokomotiv in the absence of fraud or mistake. Yet, as determined above, Steward and Fenix are entitled to summary judgment on their fraud claim. Therefore, they have shown fraud and may elect to rescind the oral contract.

Upon rescission of the oral contract, Steward and Fenix are entitled to be put in the position that they were before the contract was entered into. This is accomplished by return of the $300,000.

In sum, there are no genuine issues of material fact and Steward and Fenix are entitled to judgment as a matter of law on their First Claim for Relief. Summary judgment is granted on Steward's and Fenix's First Claim for Relief against Timmons, Evans and Lokomotiv for rescission of the oral contract and return of the $300,000.

## Conversion Claim

The Plaintiffs allege, for purposes of their Motion for Partial Summary Judgment, that

Timmons, Evans and Lokomotiv have converted the funds that Plaintiffs forwarded in reliance upon involvement in the real estate project involving the Resort. Plaintiffs also allege that they have been damaged in the amount of $300,000 as a result of the conversion.

Conversion is the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *City of Findlay v. Hotels.com, L.P.*, 441 F. Supp.2d 855, (N.D. Ohio 2006)(citing *Young v. City of Sandusky*, No. 3:03CV7490, 2005 WL 1491219 at *5 (N.D. Ohio June 23, 2005)). To establish a conversion claim, a plaintiff must prove three elements: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *Id.* Finally, a demand and refusal are usually required to prove the conversion of property otherwise lawfully held. *Id.* (citing *Ohio Telephone Equipment and Sales, Inc. v. Hadler Realty Co.*, 493 N.E.2d 289, 292 (Ohio Ct. App. 1985)).

In this case, there is undisputed Rule 56 evidence that Timmons, Evans and Lokomotiv have wrongfully exercised dominion over and withheld possession of the $300,000 inconsistent with Steward's and Fenix's rights to the $300,000. There is evidence that Steward and Fenix owned and had a right to possess the $300,000 when it was tendered to Randles and M&M, an alleged agent of Timmons, Evans and Lokomotiv. Further, there is evidence that Timmons, Evans and Lokomotiv have wrongfully retained the $300,000 even after being requested to return it. Finally, there is evidence that Steward and Fenix have been damaged by Timmons', Evans', and Lokomotiv's failure to return the $300,000.

Therefore, there are no genuine issues of material fact and Steward and Fenix are entitled

to judgment as a matter of law on their Third Claim for Relief. Summary judgment is granted on Steward's and Fenix's Third Claim for Relief against Timmons, Evans and Lokomotiv for conversion of the $300,000.

## CONCLUSION

Steward's and Fenix's Motion for Partial Summary Judgment is GRANTED. Summary judgment is granted on Steward's and Fenix's First, Second and Third Claims for Relief against Timmons, Evans and Lokomotiv. Steward's and Fenix's Fourth and Fifth Claims for Relief against Timmons, Evans and Lokomotiv remain to be adjudicated as do Steward's and Fenix's First, Second, Third, Fourth and Fifth Claims for Relief against Randles, M&M and M&M Mortgage.

**DONE** and **ORDERED** in Dayton, Ohio this Third day of June, 2009.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

A copy of this Entry and Order is to be mailed to Defendants Ronnie Timmons, Raymond L. Evans and Lokomotiv, Inc. at their last known address.